UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-323 (SRN)

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM CECIL ROMIG,

Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)**

Defendant William Cecil Romig has filed a motion asking this Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, based on his wife's health, his health, and changes to the United States Sentencing Guidelines. Doc. No. 82. The United States respectfully opposes the motion. This Court should deny Romig's motion because he has not met his burden to establish a sentence reduction is warranted under the statute.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Romig's Offenses and Conviction

Romig is a lifelong drug dealer. He is currently serving a 15-year prison sentence for methamphetamine trafficking—his tenth felony narcotics conviction, and second federal drug-trafficking conviction. PSR ¶¶ 41-49. Romig's first federal drug conviction occurred in 2002 and was also for methamphetamine trafficking. PSR ¶ 49. At the time, he was a "prospect" for

the Hells Angels. *United States v. Romig*, 933 F.3d 1004, 1006 (8th Cir. 2019). Just before leaving federal prison, he moved to amend his conditions of supervised release so that he could associate once more with that gang. *United States v. Romig*, Cr. 00-355-1 JRT, 2014 WL 1048390 (D. Minn. Mar. 18, 2014). Judge Tunheim denied Romig's motion, and the Eighth Circuit affirmed. *Romig*, 933 F.3d at 1007.

Romig did not comply with the prohibition on associating with the Hells Angels and was soon dealing drugs with them again. PSR ¶¶ 10-12. Law enforcement conducted a series of controlled buys, eventually arresting Romig in possession of 454 grams of methamphetamine. PSR ¶¶ 13-18.

This Court sentenced him to the mandatory-minimum term of 180 months in prison, "concur[ring] with the recommendation of the parties." Doc. No. 75 at 4. The Court explained Romig "committed this crime while on supervised release" after serving a 17-year sentence for his first federal conviction. *Id.* Moreover, "despite his age and lengthy prior prison sentence, he persisted, upon his release, in being given the opportunity to associate with the Hells Angels. Despite the Court denying the request, and the 8th Circuit upholding that ruling, he did so anyway, with reckless disregard for the law and in violation of the express conditions of supervised release." *Id.*

## II. Romig's Motion for Compassionate Release

Romig is currently serving his sentence at FMC Rochester. BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed June 10, 2024). He is projected to be released in September 2032.

Romig now moves for compassionate release, citing his wife's health, his health, and two recent amendments to the United States Sentencing Guidelines—Amendment 817, which pertains to "safety valve" sentencing and is not retroactive, and Amendment 821, which permits reductions in sentence for certain federal defendants, and is retroactive. In May 2024, the Probation Office reviewed Romig's file and determined he is not eligible for relief under Amendment 821 and the Office of the Federal Defender declined to seek representation. Doc. Nos. 87, 88. This then Court considered Romig's claims about Amendment 821 and issued an order denying relief. Doc. No. 91. Therefore, this memorandum does not address that issue.

In early 2024, Romig unsuccessfully sought compassionate release from the Warden of FMC Rochester. Doc. No. 84 at 1. The denial letter references only one of Romig's claims ("proposed new sentencing guidelines"). *Id.* However, the government was able to confirm Romig's request raised all the claims in his current motion and therefore agrees his motion is ripe for adjudication.

## LEGAL FRAMEWORK

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Prior to seeking relief from the Court, an inmate must present his claims to the BOP first for consideration. *See id.*; *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021). A court may grant the defendant's own motion for a reduction in his or her sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* This statutory exhaustion requirement is a "mandatory claim-processing rule" that "must be enforced so long as the opposing party properly raises it." *Houck*, 2 F.4th at 1084. "[C]ourts dismiss unexhausted compassionate-release motions without prejudice." *Id.*

If the exhaustion requirement is met, and the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," then a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," as they are applicable. *Id.* § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.

*United States v. Avalos Banderas,* 39 F.4th 1059, 1062 (8th Cir. 2022); *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In November 2023, the Sentencing Commission promulgated major changes to the policy statement governing compassionate release motions, U.S.S.G. § 1B1.13. Some aspects of the "family circumstances" policy remain unchanged. *See* U.S.S.G. § 1B1.13(b)(3). Relevant here, release based on "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" is essentially identical to the earlier policy statement. U.S.S.G. § 1B1.13(b)(3)(B). Likewise, the "medical circumstances" policy remains largely the same as before, including the provision for prisoners with "serious physical or medical condition[s]" who cannot "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B)(i).

The 2023 policy statement amendment also authorized some limited challenges to a defendant's sentence, a provision the Department of Justice opposes. Under the provision, defendants may move for compassionate release if they have served at least 10 years of an "unusually long sentence" and a change in the law occurred that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, . . . after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). However, the Sentencing Commission

made clear that compassionate release based on "changes in law" is limited to the circumstances described above. "Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c).

The changes to the policy statement have expanded the bases for compassionate release, but this Court is still bound by precedent governing such motions, and the statute itself. "[T]he extraordinary-and-compelling standard sets a very high bar and authorizes sentence reductions only in 'truly exceptional cases.'" *United States v. Logan*, 532 F.Supp.3d 725, 729-30 (D. Minn. Apr. 1, 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 287-88 (4th Cir. 2020)). Further, the Eighth Circuit has explained that "[t]he compassionate release statute is not a freewheeling opportunity for resentencing . . . ." *United State v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022).

## ARGUMENT

### I. Romig's Wife's Medical Conditions Are Not a Basis For Compassionate Release

Romig argues for early release based on his wife's medical conditions. Gigi Romig has multiple medical and mental-health diagnoses, which are described in detail in the PSR. *See* PSR ¶¶ 22, 59. She appears to have suffered

from various ailments for most of her life. *Id*. Romig asserts that his wife has no one to look after her and her mental health frequently prevents her from leaving the house. *See* Doc. No. 82 at 2-3. He made similar statements to the PSR investigator, explaining that Gigi Romig is not close to other members of her family who could potentially assist her. PSR ¶¶ 22, 59. Based on documentation Romig supplied with his motion, Gigi Romig receives supplemental security income (SSI) for her disabilities. *See* Doc. No. 84 at 2-10. The government agrees that Gigi Romig's medical condition is "extraordinary and compelling" within the meaning of § 3582(c)(1)(A). However, the Court should not release Romig from prison because, as explained below, he is a danger to others and the federal sentencing factors weigh against release.

## II. Romig's Medical Conditions are Not "Extraordinary and Compelling."

In addition to renewed claims about his sentence, Romig brings several medical claims, which he argues are "extraordinary and compelling" under § 3582(c)(1)(A). He states he has long COVID, digestive problems including GERD and diverticulosis with diverticulitis, kidney stones, varicose veins, and joint problems including osteoarthritis, complications from surgery to repair a hammer toe, and bilateral valgus deformity. Doc. No. 82 at 3-4. Romig acknowledges that FMC Rochester's "close proximity to the world-famous

Mayo Clinic would/could be of huge benefit, and at times it is," but he seeks early release because there is a "real problem with continuity" at the facility, and inmates must wait months for medical appointments. *Id.* at 4.

Romig's medical conditions, on their own or in combination, do not qualify him for compassionate release. Romig does not claim he is suffering from "serious physical or medical condition[s]" such that he cannot "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). Rather, Romig has common medical conditions and is frustrated with the pace and availability of medical care. But the difficulties he states he experiences with long waits for medical appointments and other frustrations about continuity of care are not unique to prison. Many people throughout the nation experience the same problems regardless of the care they require, providers they use, or insurance they have. *See, e.g.*, Oliver Kharraz, *Long waits to see a doctor are a public health crisis*, *STAT News* (May 2, 2023), https://www.statnews.com/2023/05/02/doctor-appointment-wait-times-solutions/; Hallie Levine, *How to avoid long wait times to get a doctor's appointment*, *Washington Post* (Oct. 30, 2023), https://www.washingtonpost.com/wellness/2023/10/30/medical-appointments-avoiding-long-waits/. The Court should find that Romig has no particularized need for early release from prison because the difficulties he is experiencing are a nationwide crisis, not an issue specific to his incarceration at FMC

Rochester. For these reasons, the Court should deny early release based on Romig's medical diagnoses.

### III. Romig's Claims About Amendment 817 Are Not a Basis For Compassionate Release.

Romig's other claim relates to Amendment 817. He claims that changes to the "safety valve" sentencing process could impact him, and he should therefore be considered for early release. Doc. No. 82. As a matter of law, Romig is not eligible for "safety valve" because his first federal conviction received three criminal-history points and he completed his prison term fewer than 15 years before the instant offense. *See* U.S. Sent. Comm'n, *2023 Amendments in Brief*, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_817.pdf. Amendment 817 would not affect that analysis. *Id*. However, even if Romig had become eligible for safety-valve, Amendment 817 is not retroactive, and "a change in the law (*including an amendment to the Guidelines Manual that has not been made retroactive*) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c) (emphasis added). Therefore, the Court should deny Romig's final claims.

## IV. Romig Still Poses a Significant Danger to the Safety of the Community.

Romig's request for a sentence reduction should also be denied because he has failed to demonstrate that he is not a danger to the safety of the community. This Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Romig would pose a grave danger to public safety if released, and the Court should deny a sentence reduction on that basis alone. His offense conduct, by itself, is enough to meet the criteria for dangerousness. His long history of drug dealing also poses a risk to others. *See United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991) (recognizing that Congress has determined that "large scale drug trafficking is a serious danger to the community"). And Romig is not just a drug-dealer, he is a member of the Hells Angels who persistently engages in criminal activity. As the Court recognized when it sentenced him, he has no inclination to abide by the conditions of supervised release. Doc. No. 75 at 4. For all these reasons, the Court should find Romig poses a risk to the community and deny his new motion.

## V. The § 3553(A) Factors Strongly Weigh Against Romig's Release.

Lastly, the § 3553(a) factors strongly disfavor a sentence reduction. The Court must consider the § 3553(a) factors, "as applicable," as part of its analysis. *See* § 3582(c)(1)(A); *Logan*, 532 F. Supp. 3d at 729. Those factors can be sufficient, on their own, to override any extraordinary and compelling circumstances a defendant can demonstrate. *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020).

None of the federal sentencing factors support early release, but Romig's history and characteristics and the need to protect the public are particularly salient here. Romig has accumulated ten felony narcotics convictions. He is an incorrigible offender and should receive punishment that reflects his track record. Similarly, the public must be protected from anyone who joins a notorious criminal gang like the Hells Angels. Put simply, Romig has proved himself to be dangerous and lawless. And Romig still has roughly eight years remaining to serve, which also weighs heavily against granting relief. *See United States v. Keitt*, 21 F.4th 67, 72 (2d Cir. 2021) (affirming denial of compassionate release where the defendant sold a large quantity of drugs as part of a gang and has served only a third of the mandatory minimum 60-month sentence he received). Thus, while the government understands the difficulties Romig's wife faces because of her illness, the Court should deny

Romig's motion for a sentence reduction because the federal sentencing factors weigh heavily against early release.

## CONCLUSION

For these reasons, this Court should deny Romig's latest compassionate release motion with prejudice.

Date: June 11, 2024

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*s/ Katharine T. Buzicky*

BY: KATHARINE T. BUZICKY
Assistant U.S. Attorney
Attorney ID No. 671031MA